## LOUISVILLE & NASHVILLE RAILROAD COMPANY *v.* HIGDON, DOING BUSINESS UNDER THE NAME OF CRESCENT COAL COMPANY.

### ERROR TO THE COURT OF APPEALS OF THE STATE OF KENTUCKY.

No. 322. Submitted March 19, 1914.—Decided June 22, 1914.

Attempts to inject Federal questions into the record by filing amended pleadings after the case has been remanded by the appellate court come too late to lay the foundation for review by this court, *Mutual Life Insurance Co. v. Kirchoff,* 169 U. S. 103, except so far as the appellate court gives consideration to, and passes upon, such questions when the case again comes before it. *Miedreich v. Lauenstein,* 232 U. S. 236.

In this case *held,* that defendant had not been deprived of Federal rights because the state court had refused to allow him to file an amended pleading and relitigate a question already decided by setting up alleged violations of Federal rights.

The State has full authority over shipments purely intrastate, and an averment that a service required at one point as to intrastate shipments might be required at other points in regard to interstate shipments only avers an indirect effect upon interstate commerce; and a defendant carrier denied leave to file an amended pleading to that effect is not deprived of rights secured by the commerce clause of the Federal Constitution.

149 Kentucky, 321, affirmed.

THE facts, which involve the validity under the due process provision of the Fourteenth Amendment of the Constitution of the United States of a judgment of the state court for damages for refusal to transport coal between intrastate points, are stated in the opinion.

*Mr. Benjamin D. Warfield, Mr. Charles H. Moorman, Mr. Malcolm Yeaman, Mr. Edward S. Jouett, Mr. William A. Colston* and *Mr. Henry L. Stone* for plaintiff in error:

The judgment of the Court of Appeals deprives the plaintiff in error of the reasonable control of its property and facilities used in the conduct of its business in violation of the Fourteenth Amendment. Am. and Eng. Ency. 158; *C. & O. Ry. Co.* v. *Hall,* 136 Kentucky, 379; Constitution of Kentucky, §§ 214, 215; *Clark Co.* v. *Lake Shore R. R. Co.,* 11 I. C. C. 558; *Dixon* v. *Central R. R. of Georgia,* 35 S. E. Rep. 369; *Elkins* v. *Boston &c. R. R. Co.,* 28 N. H. 275; Elliott on Railroads, § 1466; *Grand Trunk Ry. Co.* v. *Michigan R. R. Comm.,* 231 U. S. 457; *Hoover* v. *Penna. R. R. Co.,* 156 Pa. St. 229; *Harp* v. *Choctaw,* 118 Fed. Rep. 169; Hutchinson on Carriers, §§ 59, 60, 144; *Int. Com. Comm.* v. *Balt. & Ohio R. R. Co.,* 145 U. S. 263; *Int. Com. Comm.* v. *Alabama Ry. Co.,* 69 Fed. Rep. 227; *Johnson* v. *Midland R. R. Co.,* 4 Exch. 367; *Kansas Pac. R. Co.* v. *Nichols,* 19 Kansas, 247; *Kentucky R. R. Commission* v. *L. & N. R. R. Co.,* 10 I. C. C. 173; *Lake Shore &c. Ry. Co.* v. *Smith,* 173 U. S. 684; *Lake Shore &c. Ry.* v. *Ohio,* 173 U. S. 285; *Laurel Cotton Mills* v. *Gulf & S. I. R. Co.,* 37 So. Rep. 134; *Lee* v. *Burgess,* 9 Bush, 652; *L. & N. R. R. Co.* v. *Kentucky,* 105 Kentucky, 179; 108 Kentucky, 628; *L. & N. R. R. Co.* v. *Cent. Stock Yards,* 212 U. S. 132; *Miner* v. *New York &c. R. R. Co.,* 11 I. C. C. 422; Moore on Carriers, p. 98; *Oxlade* v. *N. E. R. Co.,* 1 C. B. N. 454; *Pitlock* v. *Wells, Fargo & Co.,* 109 Mass. 452; *Pfister* v. *Cent. Pac. R. Co.,* 59 Am. Rep. 404; *Santa Fe &c. Ry. Co.* v. *Grant,* 108 Pac. Rep. 467; *Ellis* v. *Atlantic Coast Line,* 12 L. R. A. (N. S.) 506; *Tex. & Pac. Ry. Co.* v. *Int. Com. Comm.,* 162 U. S. 197; *Varble* v. *Bigley,* 14 Bush, 698; *Wilson Produce Co.* v. *Penna. R. R. Co.,* 14 I. C. C. 170; *Wisconsin R. R. Co.* v. *Jacobson,* 179 U. S. 287.

The judgment of the Court of Appeals in this case is contrary to the Fourteenth Amendment because it requires plaintiff in error to perform a service at a rate that does not afford reasonable compensation for such service.

*Atlantic Coast Line* v. *North Carolina Corp. Comm.*, 206 U. S. 1; *Attorney General* v. *Old Colony R. R. Co.*, 22 L. R. A. 112; *Chi., Mil. & St. P. Ry. Co.* v. *Minnesota*, 134 U. S. 418; *Dow* v. *Beidelman*, 125 U. S. 680; *Georgia R. R. Co.* v. *Smith*, 128 U. S. 179; *Lake Shore &c. Ry. Co.* v. *Smith*, 173 U. S. 684; *Minn. & St. L. R. R. Co.* v. *Minnesota*, 186 U. S. 257; *Mo. Pac. Ry. Co.* v. *Nebraska*, 164 U. S. 403; *Railroad Commission Cases*, 116 U. S. 307; *Smyth* v. *Ames*, 169 U. S. 466.

The decision of the Court of Appeals and §§ 214 and 215 of the constitution of Kentucky as construed by the court in that decision impose an unreasonable burden upon the interstate commerce of plaintiff in error, and are therefore repugnant to the commerce clause of the Federal Constitution. *Atlantic Coast Line* v. *Wharton*, 207 U. S. 328; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196; *Herndon* v. *Chicago &c. Ry. Co.*, 218 U. S. 135; *I. & N. R. R. Co.* v. *Eubank*, 184 U. S. 27; *McNeill* v. *Southern Ry. Co.*, 202 U. S. 543; *Mississippi R. R. Comm.* v. *Ill. Cent. R. R. Co.*, 203 U. S. 305; *St. Louis &c. Ry. Co.* v. *Arkansas*, 217 U. S. 136; *West. Un. Tel. Co.* v. *Pendleton*, 122 U. S. 347.

*Mr. James W. Clay, Mr. J. F. Clay* and *Mr. A. Y. Clay* for defendant in error.

MR. JUSTICE DAY delivered the opinion of the court.

The defendant in error, Joe Higdon, doing business under the name of the Crescent Coal Company, brought suit in the Henderson Circuit Court, of Kentucky, to recover damages for alleged loss because of the failure of the Railroad Company to furnish him with cars at the Keystone Mining & Manufacturing Company's mine at Henderson, Kentucky, with which to perform certain contracts which he had made and which he was prevented

from fulfilling by the refusal of the Railroad Company. While the action was originally brought at law it was transferred upon motion of the plaintiff in error to the equity docket. The decree of the Circuit Court dismissing the petition was reversed in the Court of Appeals of Kentucky, and the case was remanded for a new trial in conformity to the opinion of that court (143 Kentucky, 73). The case was again tried and a decree for Higdon for damages was affirmed by the Court of Appeals (149 Kentucky, 321), and the case was brought here on writ of error. A motion to dismiss the writ for want of jurisdiction was, on December 16, 1912, postponed to the hearing upon the merits.

From the facts found and apparent in the record it appears: Higdon, doing business as the Crescent Coal Company, was engaged in buying and selling coal in the City of Henderson, and the Railroad Company was a common carrier having its main line running in and through that city. It had a belt line and various spurs and tracks leading from its main and belt lines into industrial plants in Henderson. The Keystone Company was operating a coal mine in Henderson, which was connected with the main and belt lines of the plaintiff in error's road by a spur which the latter operated and controlled. Higdon contracted with the Keystone Company for 20,000 tons of coal to be delivered to him on the spur track, and afterwards contracted with various plants having spur connections to deliver coal in car-load lots at certain prices. Thereafter he applied to the Railroad Company to furnish him cars at the Keystone Company's mine and to transport coal in them to other spurs at Henderson, offering to pay therefor four dollars per car or at the rate of about ten cents a ton, which he contended was according to the published rates of the Railroad Company. It refused to furnish him cars except at the rate of fifty cents a ton, which Higdon declined, and

afterwards the Railroad Company informed him that it would not furnish cars at any price. This action was brought with the result which we have stated.

No Federal question was raised in the first trial or upon the first appeal to the Kentucky Court of Appeals. The alleged Federal questions are said to arise because of two amended answers which the defendant in error tendered and which the Circuit Court refused to permit it to file. In its first amended answer the plaintiff in error alleged that it had built side tracks and spurs from its main track to certain industries in Henderson for the delivery and receipt of freight to and from points beyond that city; that it had constructed such a spur to the mine of the Keystone Company, with the express understanding that the plaintiff in error would not transport coal for the Keystone Company or for anyone else between that spur and other spurs at Henderson, but that it should be used solely for traffic coming into and going out of Henderson; that it was not engaged and did not propose to engage in the business of transportation as a common carrier between industries at Henderson or any other station, or in transporting coal from the Keystone Company's mine to spur tracks at Henderson, and that while it performed a switching service, it did so only when it preceded or followed transportation beyond Henderson. It further alleged that the service requested by Higdon was a transportation service, which the Railroad Company declined to perform because it did not profess to and did not engage in that business, and that it was not its duty as a common carrier so to do or to furnish cars for such purpose. It also alleged that its tariffs did not fix a rate for the movement of coal from the mine of the Keystone Company to the spurs at Henderson, and that it did not offer by such tariffs to perform such service; and that there was no other demand for such service, and no other coal mine at Henderson. And it alleged that it was not its duty to

perform such service for four dollars per car or for any
other sum, but that a rate of fifty cents a ton, which was
the legal rate in effect for hauling coal from points near
Henderson to that city and which was reasonable, would
have been a reasonable charge for the service requested
by Higdon, and that a smaller rate would not have been
adequate compensation therefor, and concluded that to
compel the Railroad Company to perform the service
asked by Higdon at four dollars per car or for a rate less
than fifty cents a ton would be to compel it to perform a
service which under the law it was not its duty to perform
and at less than cost thereof and for less than the service
was worth, with the result of depriving the Railroad Com-
pany of its property without due process of law and deny-
ing it the equal protection of the law, contrary to the
Fourteenth Amendment to the Constitution of the United
States.

In its second amended answer it set up, besides certain
of the allegations in the first amended answer to the effect
that it was not its duty to move freight between private
spurs, that its facilities at Henderson for delivering and
receiving freight were amply sufficient to accommodate
the public; that it was engaged in interstate commerce,
and that to require the defendant to perform the service
asked by Higdon would impose upon it the duty of per-
forming like services at other points on its line in Ken-
tucky and would impose upon it unreasonable, unjusti-
fiable and unwarrantable duties which it as a common
carrier was not required to perform and would be a direct
and unreasonable and unwarrantable interference with
its interstate business and its duties as a carrier of inter-
state commerce, and would impose an unreasonable
burden upon interstate commerce contrary to § 8 of Art. I,
of the Constitution of the United States.

Had the Court of Appeals put its decision upon the
ground that the duty of the Circuit Court was simply to

give effect to the judgment of the Court of Appeals by enforcing the rights of the parties upon the principles settled by it in its first decision and that the attempt to inject Federal questions into the record by amended pleadings after the case was remanded did not seasonably raise Federal questions reviewable by the Court of Appeals, the case would be ruled by *Union Mutual Life Ins. Co.* v. *Kirchoff,* 169 U. S. 103, in which this court held that such attempts to raise Federal questions came too late to lay the foundation for review here. See also *Yazoo & Mississippi Valley Ry. Co.* v. *Adams,* 180 U. S. 1; *Bonner* v. *Gorman,* 213 U. S. 86.

The Court of Appeals of Kentucky in the opinion delivered in the second case did affirm the principle of the binding character of its first decision, but as it gave consideration to the offered amended answers in their Federal aspect and ruled concerning them, we have concluded not to sustain the motion to dismiss, but to regard the Federal questions as so far passed upon by the Court of Appeals as to present a case reviewable here. *Miedreich* v. *Lauenstein,* 232 U. S. 236, 243.

Looking to the opinion of the Court of Appeals in the second case, as we may properly do, to determine the nature of its ruling concerning the offered amended answers, we find that it held that the first part of the first amended answer was simply an elaboration of the defense presented by the second paragraph of the original answer, and that on the former appeal it had held that those facts did not present a defense to the action and that the former opinion was the law of the case and further consideration of that matter was unnecessary. Coming then to consider the conclusion of the averment of the first amended answer that a rate of four dollars per car would be below the cost of the service and therefore confiscatory, it did not pass upon the effect of that charge if required of the Railroad Company against its will, but held that its rates as fixed

by its own tariffs, interpreted by its conduct, as held in the first opinion of the Court of Appeals, had made that rate applicable to the shipments requested by Higdon and that therefore the requirement of performing the service at four dollars per car was not imposed upon the plaintiff in error except because of its own tariff rate which it might itself change at any time, but which while it was in force should affect all shippers alike, including Higdon. A reference to the former opinion of the court shows that the question whether the published tariffs of the Railroad Company applied to such service as Higdon required was elaborately considered, and it was held that it did so apply, and that as the Railroad Company was performing that service for other shippers similarly situated, to avoid discrimination, which the Constitution and laws of Kentucky inhibited, it was required to give the same rate to Higdon. It therefore results that in the so-called denial of the Federal right set up in the first amended answer the court in effect held that the facts upon which it was based had been concluded by the former decision, which was the law of the case, and to permit the Railroad Company to relitigate these facts because the result reached was alleged to violate constitutional provisions would permit it to relitigate that which the court held had been settled against it by the first decision of the Court of Appeals in which no infraction of Federal right was duly set up as required to lay the foundation for review.

As to the matter set up in the second amended answer the court held that it made no defense within the interstate commerce clause of the Constitution of the United States, because all the court had done was to make a decision which required the carrier to obey the state constitution and laws which prevented discrimination as to purely intrastate shipments. We think the court was right in this conclusion. The State had full authority over shipments purely intrastate, and the facts set up in the

second amended answer' that the requirement made at Henderson might be made at other points in the State and would result in an unnecessary and unreasonable burden upon interstate commerce, only avers an indirect effect upon such commerce of the exercise of a right clearly within the authority of the State; and being only of that indirect and consequential character it does not deprive the Railroad Company of rights secured by the commerce clause of the Constitution of the United States.

We conclude that the rulings made' in the Court of Appeals of Kentucky concerning the first and second amended answers which were not permitted to be filed in the court of original jurisdiction did not deprive the Railroad Company of rights secured by the Federal Constitution.

*Affirmed.*